IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ANTHONY BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 09-CV-0459-NKL |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Plaintiff Anthony Brown ("Brown") challenges the Social Security Commissioner's ("Commissioner") denial of his claim of disability and disability insurance benefits. This lawsuit involves an application for disability insurance benefits under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433.

Brown's initial application was denied, and he appealed the denial to an administrative law judge ("ALJ"). After an administrative hearing, the ALJ found that Brown was not "disabled" as that term is defined in the Act. The Appeals Council denied Brown's request for review, rendering the ALJ's decision the final decision of the Commissioner. The Act provides for judicial review of a final decision of the Commissioner. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

The Commissioner's decision is reversed and this Court remands with instructions to award benefits.

**I. Factual Background**

The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] The hearing before the ALJ in this case was conducted remotely with the ALJ in Long Beach, California, and Brown and his attorney in Kansas City, Missouri. At the hearing, Brown testified as well as a vocational expert, Randi Hetrick. No medical testimony was received. At the time of the hearing, Brown was a forty-year-old high school graduate with no other vocational training who worked in a number of short-term jobs prior to his alleged disability. Brown alleges he became disabled on or about August 14, 2006, due to bipolar disorder, hallucinations and knee problems, among other things. In support of these claims, Brown submitted medical records from multiple doctors.

Brown's medical records are extensive and were thoroughly briefed by both parties in this case and will not be repeated in this Order. It is clear from the medical records that since at least August 2006, Brown has been repeatedly hospitalized, at least eighteen times, for such complaints as depression, suicidal thoughts, and hallucinations. Throughout his hospitalizations, Brown has been diagnosed with a variety of psychological disorders including, Bipolar Disorder, Major Depressive Disorder, Anti-Social Personality Disorder, Schizoaffective Disorder, and Mood Disorder. Brown also has been diagnosed with substance abuse problems, including abuse of alcohol, cocaine, and cannabis. At the time of his hearing before the ALJ, Brown had been treating with Psychiatrist James True, M.D.,

---

[1] Portions of the parties' briefs are adopted without quotation designated.

for about ten years. During this time, Dr. True had prescribed Brown a variety of anti-psychotic drugs including Wellbutrin, Lithium, Seroquel, and Klonopin.

On October 13, 2006, Dr. True completed a questionnaire he received from the state Disability Determination Services ("DDS"). Dr. True reported that Brown exhibited a push of speech, poor judgment, flight of ideas, poor focus, and avoidance secondary to social anxiety. Dr. True opined that Brown had poor ability to understand instructions and sustain concentration.

On November 7, 2006, J. E. Bucklew, Ph.D., reviewed Brown's records. Dr. Bucklew neither treated nor evaluated Brown in person. Although the Commissioner claims that Dr. Bucklew is a DDS psychologist, the record only reveals that Dr. Bucklew has a Ph.D. and nothing more about his background. Dr. Bucklew opined that Brown was mildly limited in terms of activities of daily living, and was moderately limited in social functioning and maintenance of concentration, persistence, or pace. He explained that "[t]his determination does not attempt to account for the effect of substance abuse on claimant's allegations, a pronounced effect demonstrated throughout treatment records at least until August of 2006." (Tr. 391). Despite this assertion and only based upon his review of Brown's records, Dr. Bucklew further opined that "[w]ith abstinence from substance abuse, and with treatment compliance, claimant should be able to remember, understand, and complete instructions with usual supervision, but he would be limited for socially demanding environments." (Tr. 391).

On October 14, 2008, Dr. True completed a mental residual functional capacity

3

("RFC") questionnaire, assessing Brown's work-related limitations independent of alcoholism or drug addiction. Based on his treatment history with Brown since December 2005, Dr. True has diagnosed him with Bipolar Disorder, not otherwise specified, cocaine dependence, and alcohol dependence. (Tr. 562.) He noted Brown's symptoms to include sleep disturbance, personality change, mood disturbance, emotional lability, substance dependence, difficulty thinking and concentrating, perceptual disturbances, illogical thinking or loosening of associations, decreased energy, hostility, and irritability.

Dr. True opined that Brown would have difficulty working at a job on a sustained basis. Regarding functional limitations, Dr. True opined that Brown had marked restrictions in activities of daily living, marked restrictions in maintaining social functioning, marked deficits of concentration, persistence, or pace and one or two episodes of deterioration or decompensation in work-like settings. Moreover, Dr. True felt that Brown would likely miss more than four days of work per month as a result of his impairments. Dr. True opined that Brown's prognosis was poor.

### A.    Brown's Testimony

On October 29, 2008, Brown testified before the ALJ. Brown testified that he could not work because of his severe mood swings and because he cannot concentrate and hears voices. Brown testified that he has anxiety and that he is generally anti-social and does not get along with people.

Brown testified that he has difficulties being around people and that he gets "real paranoid . . . and feels like the wall are closing in." (Tr. 29). Brown testified that he hears

voices telling him that people are after him, noting that he thinks others are "going to slash [his] throat or something." (Tr. 29-30). He experiences problems falling asleep at night, despite medications. He described his energy level as poor, noting that he does not want to do anything. Brown reported other symptoms to include severe mood swings, hyperactivity, dry mouth, irritability, and isolation.

He testified that he has had past difficulties with drugs, and that he last used about a month prior to the hearing. Brown further testified that he was trying to cover up his depressive feelings with substance abuse. At the time of the hearing, Brown was in substance abuse training at ReDiscover.

### B.  Vocational Expert's Testimony

The Vocational Expert ("VE"), Randi Hetrick, identified three separate types of past relevant work for Brown, including a dishwasher, bagger, and janitor. The ALJ then asked the vocational expert to assume a hypothetical claimant with the following limitations: forty years old; no exertional or postural limitations; must avoid concentrated exposure to hazardous machinery, unprotected heights, and driving; limited to simple, routine, repetitive tasks; limited to low stress tasks which would permit occasional decision making, occasional changes in work setting, and occasional exercise of judgment; no production paced work; limit interaction with the public and coworkers to superficial non-confrontational, no arbitration, and no negotiation types of activities. In response to this hypothetical, Hetrick testified that such a claimant would be capable of work as a dishwasher and a cleaner/housekeeper. She further testified that such a claimant could perform other jobs in

the national economy.

On cross-examination, Hetrick testified that if a person misses more than two days of work per month, he would not be capable of sustaining employment. She further testified that if a person was not capable of completing the minimally required tasks of a job up to one third of the day, he could not maintain employment. Finally, Hetrick testified that if a person needed three to four breaks in addition to the three typically allowed by employers, than he would not be capable of maintaining competitive employment.

## II. The ALJ's Decision

ALJs evaluate disability claims through a five-step process:

> The claimant must show he is not engaging in substantial gainful activity and that he has a severe impairment. Those are steps one and two. Consideration must then be given, at step three, to whether the claimant meets or equals [an impairment listed in the regulations]. Step four concerns whether the claimant can perform his past relevant work; if not, at step five, the ALJ determines whether jobs the claimant can perform exist in significant numbers.

*Combs v. Astrue*, 243 Fed. Appx. 200, 202 (8th Cir. 2007) (citing SSR 86-8, 20 C.F.R. §§ 404.1520, 416.920).

After describing this process, the ALJ found that Brown was not disabled. At step one, he determined that Brown was not engaging in substantial gainful activity since the amended onset date of August 14, 2006. At step two, the ALJ determined Brown was severely impaired by schizoaffective disorder and substance abuse disorder.

At step three, the ALJ determined that Brown did have a combination of impairments that meets or medically equals one of the listed impairments, including schizoaffective

disorder and substance abuse disorder. The ALJ also commented on the medical opinions of record but did not discuss the severity of other impairments diagnosed in the medical records, including Bipolar Disorder, Major Depressive Disorder, Anti-Social Personality Disorder, and Mood Disorder. However, the ALJ further determined that, absent substance abuse, Brown would not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.

At step four, the ALJ found that if Brown stopped the substance use, he would have the residual functional capacity to perform a full range of work at all exertional levels consisting of simple routine repetitive tasks with limitation to low stress tasks which permit occasional decision-making; occasional changes in the work setting and occasional exercise of judgment; no production rate and pace work such as traditional assembly line work; and limited interaction with the public and coworkers. The ALJ found that Brown's statements concerning the severity of his medical condition were not credible because his alleged limitations are not consistent with his treatment.

At the fifth step, the ALJ considered the testimony of the VE. He found that Brown did not have any past relevant work. However, the ALJ stated that based upon the VE's testimony, if Brown stopped his substance use, he would be capable of making a successful adjustment to work that exists in significant numbers in the national economy. Therefore, the ALJ found that Brown was not disabled.

### III. Standard of Review

In reviewing a denial of disability benefits, this Court considers whether the ALJ's

decision is supported by substantial evidence on the record as a whole. *See Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). "On review, a Court must take into consideration the weight of the evidence, apply a balancing test, and determine whether substantial evidence in the Record as a whole supports the findings of fact upon which a Plaintiff's claim was denied." *Strom v. Astrue*, No. 07-150, 2009 WL 583690, at *22 (8th Cir. Mar. 3, 2008) (citation omitted). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choices." *See Casey v. Astrue*, No. 06-3841, 2007 WL 2873647, at * 1 (8th Cir. Oct. 4, 2007). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id*. (quoting *Nicola*, 480 F.3d at 886).

**IV.  Discussion**

Brown argues that the ALJ erred by (1) giving little to no weight to the opinion of treating and examining physicians and by giving undue weight to a non-treating, non-examining, non-medical source; (2) failing to find Brown's bipolar disorder, anti-social personality disorder, and depressive disorder to be severe impairments; and (3) finding that drug dependence and alcoholism was a contributing factor material to the determination of disability. Because the Court finds that the ALJ's decision was not supported by substantial evidence on the record as a whole, the Court remands for an award of benefits.

At issue in this case is whether a substance use disorder is a contributing factor

8

material to the determination of Brown's disability. According to the Social Security Act, "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(c), 1382c(a)(3)(J). Alcoholism or drug addiction is "material" if the individual would not be found disabled if alcohol or drug use were to cease. *See* 20 C.F.R. § 416.935(b)(1). It is the applicant's burden to demonstrate that the substance abuse was not a contributing factor to the claimed disability. *Vester v. Barnhart*, 416 F.3d 886, 888 (8th Cir. 2005); *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir.2000) ("The focus of the inquiry is on the impairments remaining if the substance abuse ceased, and whether those impairments are disabling, regardless of their cause.").

In a case involving alcohol and drug use, the ALJ must first determine whether the claimant is disabled "using the standard five-step approach described in 20 C.F.R. § 404.1520 without segregating out any effects that might be due to substance use disorders." *Brueggeman v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003). "If the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of substance use disorders are absent." *Id.* at 694-95. As in this case, when a claimant is actively abusing alcohol and drugs, "this determination will necessarily be hypothetical and therefore more difficult than the same task when the claimant has stopped." *Id.* However, when deciding the issue of materiality of substance abuse, "a tie goes to [the claimant]." *Id.*

9

at 693.

In this case, the ALJ followed the five-step process and found that Brown was disabled. Then he had to determine whether Brown was disabled absent the substance abuse. The Court does not find error in the ALJ's application of the legal standards. However, when the record is viewed as a whole, the ALJ's determination that Brown is not disabled due to deficient mental functional abilities is not supported by substantial evidence.

"When determining a claimant's RFC, the ALJ's determination must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003). The ALJ in this case was faced with medical records containing numerous hospitalizations for Brown in which both mental illness and drug and alcohol abuse were diagnosed. Those records do little to shed light on whether Brown's substance abuse is "material." Further, aside from his brief stays in the hospital, Brown never had sustained periods of sobriety. However, there are two medical opinions in this case, one from Brown's treating psychiatrist and another from a records review conducted by Dr. Bucklew. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) ("[A] claimant's residual functional capacity is a medical question."). The ALJ did not receive any live testimony from either of these medical experts.

On October 13, 2006, Dr. True completed a questionnaire he received from DDS. Dr. True reported that Brown exhibited a push of speech, poor judgment, flight of ideas, poor focus, and avoidance secondary to social anxiety. Dr. True opined that Brown had poor ability to understand instructions, sustain concentration. In the 2006 report, Dr. True was not

requested to comment on the materiality of Brown's substance abuse.

Two years after this report, on October 14, 2008, Dr. True completed a Mental Impairment Questionnaire, which specifically articulated that the responses were to be about what Brown could do independent of alcoholism and drug addiction. In that report, Dr. True opined that on average Brown would be absent from work as a result of the impairments or treatments more than four days per month.

In commenting on Dr. True's 2008 report, the ALJ explained that "Dr. True did not give an opinion as to the materiality of the claimant's substance use disorder to the finding of disability." (Tr. 13). The Commissioner claims that this incorrect statement by the ALJ is harmless error because the ALJ further stated that he did not "give any weight to Dr. True's assessments if they are to be interpreted to mean that the claimant's substance use disorder is not a contributing factor material to the finding of disability." (Tr. 14). The ALJ explained that the record demonstrates that from August 2006 through September 2008 Brown was hospitalized for depressive and psychotic symptoms secondary to cocaine and alcohol abuse as well as for medication non-compliance, and therefore Dr. True's assessment was contradictory to Brown's other medical records.

The Court does not locate any medical record in which Brown's hospitalizations for his mental disorders are specifically classified as "secondary" to alcohol and drug abuse. Indeed, other than Dr. True's 2008 report, the Court does not locate any other medical expert in the record commenting on the materiality of Brown's substance abuse disorder or his capacity to work absent his substance abuse. There are several records analyzed by the ALJ

in which, for example, Brown commented that the medication takes the voices away completely and helps with the mood swings or a note from Swope Parkway Health Center indicating that Brown was stable and relatively asymptomatic when he abstains from substance abuse. There is also one medical record analyzed by the ALJ from Dr. True in September 2008 in which Dr. True states that when Brown is not under the influence of drugs, the mental status examination was within normal limits. However, none of these medical records discussed by the ALJ specifically opine on whether Brown would still be disabled if he abstained from substance abuse.

These records simply do not opine on Brown's RFC absent substance abuse. Rather, the only document that does opine on these issues is from Brown's treating psychiatrist, and indicates that Brown has marked restrictions in activities of daily living, marked restrictions in maintaining social functioning, marked deficits of concentration, persistence, or pace; and one or two episodes of deterioration or decompensation in work-like settings. Brown's psychiatrist further opined that as a result of Brown's impairments or treatment it is likely that he would be absent from work for more than four days per month. In response to cross examination, the VE testified if a person misses more than two days of work per month, he would not be capable of sustaining employment.

Based on this evidence, the Court concludes that the ALJ improperly discounted and gave no weight to a treating physician's opinion on the materiality of Brown's substance abuse and his RFC. *See Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009) ("Under the SSA's regulations, an ALJ must give a treating physician's opinion controlling weight if it

12

is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2))); *Strongson v. Barnhart,* 361 F.3d 1066, 1070 (8th Cir.2004) ("[An ALJ] may not simply draw his own inferences about plaintiff's functional ability from medical reports.").

Further, rather than rely on Brown's treating psychiatrist's opinion, the ALJ sought to use Dr. Bucklew's records review as commentary on the materiality of Brown's substance abuse disorder. *Landes v. Weinberger*, 490 F.2d 1187, 1190 (8th Cir. 1974) ("To attempt to evaluate disability without personal examination of the individual and without evaluation of the disability as it relates to the particular person is medical sophistry at its best."). In the records review, completed in November 2006, Dr. Bucklew stated in one sentence that his determination "does not attempt to account for the effect of substance abuse on claimant's allegations." And in the next sentence, Dr. Bucklew concludes that with both abstinence from substance abuse and treatment compliance, Brown should be able to "remember, understand, and complete instructions with usual supervision, but he would be limited for socially demanding environments." These two statements are contradictory and cannot be given weight for the proposition that Brown's substance abuse is material to his disability determination. Giving Dr. True's opinion the appropriate controlling weight, the Court finds that absent Brown's substance abuse, he would still be disabled.

## V. Conclusion

The ALJ's decision was not supported by substantial evidence. Accordingly,

it is hereby

ORDERED that Anthony Brown's Petition [Doc. # 4] is GRANTED. The decision of the ALJ is REVERSED and the case is REMANDED with instructions to award benefits.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: February 16, 2010
Jefferson City, Missouri